May it please the court, my name is Christine Ackland, seated at council table is Tim Bechtold, and together we represent Appellant Alliance for the Wild Rockies. I'd like to reserve two minutes for rebuttal. Alright, you have a clock there and I'll also try to help you. Thank you. Before I begin, is there a particular area this court would like me to focus in this limited time? Sure. There was a declaration that the government points to, and the government says, look, the declaration says, this is clear error review, there is something in the record to support what the judge did, case is over. Why is that not right in this case? First, your honor, by the time Alliance received the response from the agency's 60 day notice, the agencies had already been planning on and to prepare and promising to submit the biological assessments for five years. An alliance recognized through their FOIA requests and litigations that the agencies were scheduling completion dates for the biological assessments, particularly in the Columbia River biological assessments, and then failing to meet those deadlines over and over again. By the time the alliance received this vague future date of compliance in the response to 60 day notice, rather than waiting another six months to see if the action agencies would finally submit the biological assessment and thus re-initiate consultation, Alliance chose to file suit. And once Alliance filed suit, they actually re-initiated consultation. Second, your honor, if the catalyst theory were to only apply when action agencies admit a causal connection, it would completely eviscerate the catalyst theory, because as this court held in Savlin, the defendants are usually rather reluctant to concede that litigation prompted them to amend their ways. And so that's why this court held in that case as well that the chronology of events is an important consideration in determining whether litigation prompted defendants to finally comply with the law. Does it boil down to what do we make of the chronology? Your honor, yes. It boils down to whether, well, the catalyst theory requires first that the court determine what the lawsuit sought to accomplish. And because Alliance sued, sought the re-initiation of consultation, the inquiry into that first step then becomes what determinative action by the agency re-initiates consultation. And that question is answered at 50 CFR 402.14C, which states, Consultation shall not be initiated by the federal agency until any required biological assessment has been completed and submitted to the service. And here, that undisputedly did not happen for either the Columbia River Biological Assessment or the Willamette Biological Assessment. And that's important, particularly important here because the submission of a biological assessment is the trigger that sets the deadline for the service, the expert agency, to publish a biological opinion. And in that biological opinion, the service ultimately opines whether or not the agency's action adversely modifies critical habitat. And that's why Alliance filed suit. The suit was intended to get the agencies to finally submit the biological assessment to spur the agencies into finally re-initiating consultation and complying with the law. And so the chronology of events is that Alliance filed suit and the agencies finally complied with the law. And, Your Honor, I'd like to, Your Honors, I'd like to point out that there are two different biological assessments here, the Columbia River and the Willamette. And in the Willamette, the action agencies drafted a, quote, near final draft of the biological assessment. And that's at year 86. And that was at the end of 2011. And after that, after the end of 2011, the agencies completely stalled and sat on that biological assessment for years. And only after Alliance filed suit did the agencies finally complete that near final. This is the Willamette, Your Honor. Yes. Only after Alliance filed suit did the agencies complete that biological assessment, submit it to the service, thus re-initiating consultation and complying with the law. The agencies point to a lack of, a limitation on manpower. And, again, that's at 86 as the reason for noncompliance of the ESA. But we know that this court's holding in Environmental Defense Center v. Babbitt that the lack of funding does not excuse an agency's compliance with the law. No, there wasn't, Your Honor. And that's what makes it difficult in this case because there was no administrative record. The defendants filed a motion to dismiss prior to an administrative record being submitted to the court. We see the actions that the action agencies exhibited here over and over again in consultation cases and listing cases where the agencies delay compliance with the law and then finally comply once plaintiffs file suit. And that is the whole reason that the catalyst theory exists. It's an acknowledgment by the courts that Congress intended citizen suit provisions to apply where the agencies fail to comply with the law and then only comply once the plaintiffs file suit. And that is exactly what has happened here. Alliance filed a complaint, and prior to that, the action agencies were sitting on these biological assessments and planning the biological assessments for years and years. And once the suit was filed, they finally submitted the biological assessments and complied with the law. Your Honors, this is not a case, as defendants or appellees suggest, where Alliance was hopping on a bandwagon. Alliance spent years monitoring the preparation of these biological assessments through FOIA litigation and FOIA requests, and they saw that the agencies were involved in an extended pattern of delay. And they recognized that without a filing of a complaint, there was likely never going to be a reinitiation of consultation. And that is exactly what happened here. And I see that I have about two and a half minutes remaining. I'd like to reserve that for rebuttal. You may. Thank you. May it please the Court, Avi Kupfer for the federal appellees. With me at counsel's table is Matthew Love, who represents the interveners, and will be taking two minutes to argue. The district court's denial of Alliance's fees motion was not an abuse of its discretion. As the plaintiff, Alliance bore the burden of proving that its lawsuit caused the agencies to reinitiate consultation, and it presented a simple chronological story to the district court. But the district court found, based on the evidence before it, that the agencies had a plan to reinitiate consultation on the many dams in the Pacific Northwest that were affected by the bull trout critical habitat designation, and they were marshaling their resources to finalize and to execute on that plan. There's a difference, isn't there, in terms of timing between Columbia and Willamette, isn't there? I mean, I get you on Columbia. You say you were ready, and they sort of jumped on at the end. But in Willamette, it seemed like you were done. The government was done in 2012 and just sat on it, and finally they sued. Well, there are three points I'd like to make in response to that question, Your Honor. The first is that the district court's factual finding, which this panel reviews for clear error, is not based only on the Peters Declaration, which did state that the Willamette biological assessment was nearly complete in 2012. It's also based on two other important pieces of evidence in the record. The responses to the threat of lawsuit, the notice of intent, where the agency said they were going to complete the Willamette BA in fall 2016, which is exactly what they did, and the fact that the agencies had reinitiated consultation already on three of the dams named in plaintiff's lawsuit. What was the difference between the plan in 2012 and as filed? There was no difference, as I'm aware, in that plan. But the difference was that the Army Corps of Engineers, which was primarily responsible for coordinating the Willamette BA, was also drawn into other matters that arose during that time period. Some of those are outlined in the Peters Declaration. They needed to respond to the District of Oregon's injunction on the Federal Columbia River Power System biological opinion. They also had to respond to the supplemental biological opinions issued by the fisheries service on the Columbia River Power System. So it was an issue of balancing limited resources by the agency. It took them four years to balance? Yes, Your Honor. It seems a rather inconsistency. First, there's not enough resources, so we can't proceed with a nearly final biological assessment. Then, to credit your argument that things are going on and they're now balancing with other projects, and then miraculously, upon the filing of suit, they're able to complete this. So we may have to give clear error review to findings that don't have any foundation here, but I don't see where you can make the jump to say that there's no causal connection here between the filing of the suit and the conduct. Maybe you can clear that out. Well, Your Honor, we would argue that even if there were a causal connection between the notice of intent to sue and the finalization of the biological assessments, that would still be insufficient for recovering fees, because for three reasons, at least three reasons. First, Your Honor, the fees provision itself states that a district court in its discretion, when it deems it appropriate, may award fees for cost of litigation, not cost of filing a letter threatening litigation, the notice of intent to sue. And this agency, I'm sorry, this Court's cases also reflect that distinction. In a 2015 case of this Court in the quarter, this Court said that the purpose of a notice of intent provision is to obviate the need for lawsuit. And it can do that in a few different ways. It can do that by giving the agencies an opportunity to enforce the Endangered Species Act, but it can also do that by giving the agencies an opportunity to explain to would-be plaintiffs that a lawsuit is unnecessary because they issued a letter to the would-be plaintiffs, eventual plaintiffs, saying, we're nearly finished with this, a lawsuit's not necessary, we've been working on this for several years, this is an incredibly complex action at issue here, an action that requires multiple agencies to balance competing congressional objectives to manage water runoff in an area the size of France. So this wasn't a simple task that the agencies had to execute on, but the point I'm making is that the notice of intent fulfilled its purpose in obviating the need for lawsuit. The agencies explained that it was unnecessary, they were going to complete reinitiation in fall 2016, and that's exactly what they did. The purpose of the notice of intent provision is to achieve positive outcomes under the Endangered Species Act, not to generate attorney's fees. And if this court were to hold to the contrary, it would create a situation where agencies would have perverse incentives to be reluctant in explaining to potential plaintiffs that they were fulfilling their responsibility under the Endangered Species Act. There's a presumption that arises when the government is doing something and an outside interest group indicates an intention to sue, and then the government does what it apparently was going to do. What evidence did the government offer to rebut that presumption? Your Honor, I think that the presumption that is key here is the presumption of regularity that attaches to agency decision-making. And here the plaintiffs had an opportunity to present any evidence in the record that that presumption shouldn't hold here. But they didn't do that. They didn't take that opportunity. And all of the evidence in the record supports that presumption, the fact that the agencies had already reinitiated consultation on several key dams, which were named in plaintiff's lawsuit, the fact that the Peters Declaration explained some of the hiccups in the process between 2011 and 2015, and the fact that the notice of intent explained to the would-be plaintiffs that they were going to reinitiate in fall 2016, which is exactly what the agencies did. This court can decide this appeal narrowly by finding that the district court did not abuse its discretion in weighing that evidence before it. Otherwise, an agency needs the ability in response to a notice of intent to explain that it's doing its job. So your argument is that even though, with respect to Willamette, the assessment had been pending for four years, that Alliance for the Wild Rockies should have waited until September or the fall of 2016 to see how things went? Well, our argument is threefold. It's first that the evidence shows that it wasn't simply pending for four years, that there were some hiccups in defining the scope of this complex action, and that's also what required more time. Second, it's that there's a presumption of agency regularity, administrative regularity, that the appellants hadn't rebutted. And third, which I explained a few minutes ago, is the point that the threat of litigation, a notice of intent, is itself insufficient to generate. I don't think you answered my question, so let me just rephrase it. Is it your position that once the agency notified that things would be proceeding in the, I think as they put it, the fall of 2016, that the Alliance should have waited to see what happened yet again in the fall of 2016? That's correct, Your Honor, that if they had waited a few months, the agencies were going to reinitiate and a lawsuit was unnecessary. There were several, you referred to several, competing projects that were going on at the time? Yeah, I also see I'm biting into intervener's counsel. We'll give him minutes after you answer Judge Hawkins' question. At some point, was the project reprioritized? Willamette? Yes, Your Honor, once the agencies were able to complete some of the necessary work. Yes or no? Yes. Were they able to reprioritize? Yes. When was that done? It was done in 2016. After the intent to sue? I believe it was before the intent to sue, Your Honor, but our argument is that even if it was in response to the notice of intent, it still would have been insufficient for generating fees. Thank you. Could you put two minutes back on the clock for Mr. Love? Thank you, Your Honor. May it please the Court, Matt Love representing Rosa Irrigation District and Kennewick Irrigation District. When assessing whether this court or whether the district court abused its discretion in denying an attorney fee motion, I think it's really important for this court to focus on the federal government's responses to the Wild Rocky 60-day notice. These responses are found at ER 161 through 173. These responses were provided on June 30, 2016, 12 days before Wild Rockies filed its lawsuit on July 11, 2016. So what do these 60-day notices tell us? Well, they tell us for four of the federal dams, the 60-day notice explains that those dams were outside the bull trout critical habitat and had no effect on bull trout critical habitat. Yet the plaintiffs went ahead and filed their lawsuit and included those four dams. It tells us that with respect to several other dams, the 60-day notice explains that the agencies had already initiated consultation. With respect to those dams, the federal court dismissed those claims and the plaintiffs have not appealed. Those dams include the dams in the Yakima Basin, my client's dams. Those dams, plaintiffs sought to enjoin the operation of those dams. And they sought to, and that would have harsh and draconian impacts on my clients and on the Yakima Basin. So just to be clear, your client is not tied up with the Willamette Project, is that correct? That's correct. You're in Yakima and in that basin? That's correct, Your Honor. That's correct, and not on the FCRPS either. I understand. But we do have an interest in this attorney fee claim in the sense that we have a long-term interest. We've spent millions of dollars on salmon recovery efforts and this lawsuit was a distraction and it undermines what we were trying to accomplish in the Yakima Basin. So with respect to those remaining dams, the 60-day notice is clear. It says that in the fall of 2016, we'll be initiating consultation. The plaintiffs had an opportunity to wait to see if that occurred. Sure, they could have brought their lawsuit and their lawsuit would have been right, but it doesn't necessarily meet the standard in terms of entitlement to attorney fees, which is, is there a causal relationship between the litigation brought, not the litigation threatened, but the litigation brought, and the relief obtained? In this case, there was no clear error, so the district court decision should be affirmed. Thank you. Thank you. You have about two minutes left. Thank you, Your Honors. First, I'd like to address Judge Hawkins' question about when the action agencies reprioritized the biological assessment. There's actually no evidence in the record of when the agencies reprioritized, but we know from ER 86 that the action agencies admit that no work was done on the Willamette from after 2011 until September 27th, which is well after Alliance filed suit. Second, this Court should review the case de novo because the lower court erred in properly applying the catalyst theory, and that legal error allows this Court to review de novo. However, the standard of error is not determinative because the lower court failed to determine what the lawsuit sought to accomplish, which is, again, a misperception of law. And then by failing to make that determination, the lower court failed to consider the relevant regulatory definition of a reinitiation of consultation. And because this Court has held that a lower court decision will be overturned where the lower court misperceived the law or failed to consider a relevant factor, this Court may overturn the lower court's decision. Lastly, Your Honor, if the action agencies are allowed to respond to a 60-day notice with a vague future date of compliance, it would completely diminish the purpose and need of a 60-day theory, and that's because, first, plaintiffs... They did say fall 2016, right? Mm-hmm. So after four years, that's a fairly specific date, is it not? It is, Your Honor, after four years of delay. But it is a specific date in which they say they're going to reinitiate. Well, in regards to the federal Columbia, they submitted that they reinitiated December, and so that's kind of a gray area. Whether that's fall or winter, I don't know, but it doesn't... Depends on where you live. I guess so. And I see my time is up, and I complete this thought. Plaintiffs would never know exactly when to file suit, and then once they did, action agencies would be immune from citizen suit or immune from liability of attorney's fees, and that would completely eviscerate the catalyst theory and also diminish the citizen suit provision, which allows the citizens of the United States to hold the government accountable for the laws that Congress enacted. Thank you. Thank you. The case just argued, Alliance for the Wild Rockies v. Army Corps of Engineers and the Rosa Irrigation District, is submitted. Thank all counsel for your argument and briefing this afternoon.
judges: Hawkins, McKeown, Owens